IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCUS QUINNEY, #316624, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:20-CV-229-ALB |
| ) | (WO) |
| ) | |
| LEON BOLLING, et al., ) | |
| ) | |
| Defendants. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

Marcus Quinney, a state inmate currently incarcerated at the Kilby Correctional Facility, initiated this 42 U.S.C. § 1983 action on April 2, 2020.  In this case, Quinney alleges the defendants have denied him adequate medical treatment for a mass behind his right eye.  Doc. 1 at 2–3. In his request for relief, Quinney seeks issuance of a preliminary injunction "ordering [the defendants to] cease their negligence and deprivation of medical needs and constitutional rights."  Doc 1 at 3.

In light of this request, the court directed the defendants to file a response to the motion for preliminary injunction showing why it should not be granted, Doc. 7, and they have done so, Doc. 15.  In accordance with the directives of this order, the defendants submitted an affidavit from Dr. Wilcotte Rahming, the Medical Director at Kilby, and relevant medical records in support of their response.  Doc. 15-1 at 1–55.

1

Upon consideration of the motion for preliminary injunction and after review of the response thereto filed by the defendants, the undersigned finds that such motion is due to be denied.

## II.  DISCUSSION

### A.  Preliminary Injunction – Requisite Elements

"The grant or denial of a preliminary injunction rests within the sound discretion of the district court." *Transcon. Gas Pipe Line Co. v. 6.04 Acres, More or Less*, 910 F.3d 1130, 1163 (11th Cir. 2018); *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (same).  This court may grant a preliminary injunction only if the plaintiff demonstrates each of the following requisite elements: (1) a substantial likelihood of success on the merits; (2) an irreparable injury will occur absent issuance of the injunction; (3) the injunction will not substantially harm the non-moving parties; and (4) if issued, the injunction will not be adverse to the public interest.  *Long v. Sec'y Dept. of Corrections*, 924 F.3d 1171, 1176 (11th Cir. 2019); *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983).  "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's*, 147 F.3d at 1306 (internal quotations omitted); *Wreal LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations and citation omitted) ("A preliminary injunction is an extraordinary and drastic remedy, and [Plaintiff] bears the burden of persuasion to clearly establish all four of these

prerequisites."); *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion on each of the requisite elements).

**B.  Defendants' Response to the Motion for Preliminary Injunction**

The defendants file an affidavit from Dr. Wilcotte Rahming and Quinney's relevant medical records in response to the motion for preliminary injunction  Doc. 15-1 at 1-55. In his affidavit Dr. Rahming explains the medical treatment provided to Quinney for his right eye.  After a thorough review of these medical records, the court finds that the details of medical treatment provided to Quinney as set forth by Dr. Rahming in his affidavit are corroborated by the objective medical records contemporaneously compiled during the treatment process.

In his affidavit, Dr. Rahming addresses the allegations of deliberate indifference, in relevant part, as follows:

> . . . . The new arrival intake screening form indicates that when Mr. Quinney was initially incarcerated with the Alabama Department of Corrections, he was blind in his right eye which resulted from a possible tumor and/or cancer.
>
> Mr. Quinney apparently informed the intake nurse that he had an MRI in 2018 that showed a tumor in his right eye.
>
> Form 5 of the New Arrival Intake Screening Form indicates that Mr. Quinney informed the nurse that in 2003 he complained of headaches and numbness in his right eye and face. The physicians apparently found a tumor.

In 2008, a federal prison official evaluated Mr. Quinney and sent him for an MRI.

The day after Mr. Quinney was incarcerated with the ADOC, eye drops were prescribed for Mr. Quinney.

Mr. Quinney had a full physical evaluation including an evaluation on his right eye on January 16, 2019.

A series of objective tests were ordered [by medical personnel] for Mr. Quinney on January 4, 2019.

On January 28, 2019, a Release of Medical Information from the federal correctional facility that Mr. Quinney was previously incarcerated at was ordered. The records received from the federal correctional facility included records from Maurice Fitz-Gerald (sic) dated January 3, 2018. Those records from Dr. Fitzgerald state in part as follows:
Chief Complaint
The chief complaint is: Eye is closed shut every morning. Tumor is growing.
History of present illness:
Marcus Quinney is a * year old male.
Medication list reviewed[.]
Difficulty opening [] the right eye in the morning.
Assessment:
He supposedly has a tumor in his brain behind his right eye. It is paralyzing his eye. He is not able to see out of it. We are going to get another MRI of it. We have a copy of one of the MRIs he has had done. We also are sending him to the Eye Foundation Hospital in Birmingham. He is incarcerated but the jailer who is with him said they would get him there. So Sissy is going to get him an appointment.

The MRI dated November 9, 2018, is also attached hereto. The MRI, as read by the radiologist, states in part as follows:
MRI with and without brain contrast.
History: * year old with a cyst of the right orbit to be checked for growth. Technologist's history is that prisoner has had dizziness, right side numbness and weakness for 1 to 2 months. Additional history is that in 2008, prisoner was found to have a tumor, right eye, at Butler, North Carolina Federal Penitentiary. He is now in Marengo County Detention with headaches, dizziness, and recheck for growth of right orbital tumor.
Impression:
1.  No acute intracranial process

4

2. Normal appearance of the cerebral and cerebellar hemispheres, as well as cranial nerves and size of ventricular system.

3. Essentially no interval change in the curvilinear intraconal right retrobulbar basically cystic mass (earlier diagnosed as a lymphangioma) without contrast enhancement. On today's examination, the lesion measures 21x11x11mm and in 2008, measured 19.5x9.5x13 mm so it appears stable in size. Right sphenoid sinus retention cyst.

Mr. Quinney was seen by an optometrist on February 27, 2019 at the Kilby Correctional Facility. The optometrist noted that the MRI indicated that there was a cyst behind Mr. Quinney's right eye.

Mr. Quinney was sent out and seen at the Callahan Eye Hospital Clinic on February 6, 2019, and seen by a specialist ophthalmologist, Russell Read, M.D. Dr. Read's notations from his visit with Mr. Quinney on February 6, 2019 state in part as follows:

History of present illness:

1. Eye pressure/headache.
2. The * year old male presents for evaluation of eye pressure/headache in the right eye.
3. Complains of increased headache around right eye involving forehead, started about 4 months ago. States symptoms started after he fell down and hit head. States vision OD has been poor for "many years," with limited vision. Also C/O flashes/floaters no increase in symptoms. Vision left eye is good, no visual complaints. Was using Dexacidin eye drops QID, OD, but stopped one week ago due to increased irritation.
4. Plan:
   1. Very large angle esotropia.
   2. Seen Dr. Russell Read
   3. – Forced ductions: positive, unable to move eye into primary position.
   4. No EOM ability.
      1. Discussed the possibility of strab surgery, but discussed that patient has lots of CRS posteriorly and will not improve vision.
      2. Orbital Lymphangioma
      – MRI sent with prisoner today, which reports lymphangioma is stable from 10 years ago.
      3. Enophtalmia
      – Aware, uncertain of significance.
      4. S/P Sulcus IOL OD
      – Seems like complicated surgery.
      – Poor visual potential based on posterior exam.

5

The records show that Mr. Quinney is seen regularly with eye examinations while incarcerated at the Kilby Correctional Facility.

Mr. Quinney was seen recently on February 27, 2020. The medical provider's notes state in part with regard to their evaluation of Mr. Quinney:
Sick call.
Complains of drainage/matting in right eye-chronic x 3 weeks. States H/O tumor behind right eye which he reports has been growing over the years and has lost vision in the right eye after surgery was performed to remove cataracts over 15 years ago. States has chronic intermittent H/A and pain which he attributes to the tumor behind his eye.
Prescriptions written for conjunctivitis and swelling to the right eye in December, however, patient presents with full tube of Erythromycin. States he was only instructed to use it for "a couple of days."
***
1. Conjunctivitis – resume Eryopthalmic. Follow up 7 days.
2. Blind OD positive for strahismus medil OD (esotropia)
3. Orbital lymphangioma 0 chronic
4. Stable x 10 years per last MRI (see [MRI] report 11/9/18).
5. Ophthalmology consult – 2/6/19 has been submitted

Consultation report – Strabismus surgery will not improve vision secondary to CRS poshriorly stable lymphangloma of orbit – surgery will not improve vision secondary to ophthalmology findings on posterior exam.
Will again discuss with medical doctor secondary to UM being approved.
Secondary to stable MRI report.
2018 report compared to 2008 report – no interval in size.
Surgery complicated and will not restore vision secondary to posterior exam findings.
Consultant's findings discussed with patient.
Patient verbalizes understanding of consultant's findings and poor prognosis of vision restoration.

Mr. Quinney's necessary medical needs at no time have been ignored or delayed.

Mr. Quinney has been sent out to see [a] specialized ophthalmologist at the Callahan Eye Hospital in Birmingham, Alabama. The specialist at the Callahan Eye Hospital in Birmingham did not recommend any objective surgical needs.

Mr. Quinney's necessary medical needs are being closely monitored by the medical staff at the Kilby Correctional Facility.

>Mr. Quinney's necessary medical needs have at all times been provided with medical care within the standard of care of physicians practicing medicine in the State of Alabama.

Doc. 15-1 at 3–8.

## C. Deliberate Indifference — Standard of Review

Quinney contends the defendants have acted with deliberate indifference regarding treatment provided to him for a mass impacting his right eye. Doc. 1 at 2–3. The defendants adamantly deny this allegation.

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Helling*, 509 U.S. at 31–32. A prison official may therefore be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828. To demonstrate an Eighth Amendment violation regarding conditions, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834; *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (holding that the law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation). With respect to the requisite objective element, an inmate must first show "an objectively substantial risk of serious harm . . . exists. Second, once it is established that the official is aware of this

7

substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838).

>In sum,
>
>[u]nder the objective component, the plaintiff must demonstrate "a substantial risk of serious harm." [*Farmer*, 511 at 834]. . . . Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane* [*v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)], (quotation omitted). . . . The [relevant] inquiry . . . [is] whether the defendants "disregard[ed]" the risk "by conduct that is more than mere negligence," *id*. (quotation omitted)—or more simply stated, whether they "recklessly disregard[ed] that risk," *Farmer,* 511 U.S. at 836, 114 S.Ct. 1970.

*Swain v. Junior*, ––– F.3d  –––, 2020 WL 3167628, *5 (11th Cir. June 15, 2020); *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotations and citations omitted) ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.").

>The Eleventh Circuit,
>
>(echoing the Supreme Court) ha[s] been at pains to emphasize that "the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence," *Goodman v. Kimbrough*, 718

> F.3d 1325, 1332 (11th Cir. 2013), and is in fact akin to "subjective recklessness as used in the criminal law," *Farmer*, 511 U.S. at 839–40, 114 S.Ct. 1970; *see also id.* at 835, 114 S.Ct. 1970 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). Were we to accept the district court's determination that resulting harm, the failure to take impossible measures, or even the combination of both suffices to show a criminally (and thus constitutionally) reckless mental state, "the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." *Goodman*, 718 F.3d at 1334.

*Swain*, 2020 WL 3167628, at *7.

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King*, 997 F.2d at 261 (internal quotations and citations omitted). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh*, 268 F.3d at 1028); *Lane*, 835 F.3d at 1307 (11th Cir. 2016) (holding that the Eighth Amendment is violated only when a correctional official "is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury.").  The Eleventh Circuit has consistently held that "'[i]n order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from

cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981), *cert. denied*, 464 U.S. 932 (1983); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (same).

> As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with "a sufficiently culpable state of mind." [*Farmer*, 511 U.S.] at 834, 114 S.Ct. 1970 (quotation omitted). Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show "subjective recklessness as used in the criminal law." *Id.* at 839–40, 114 S.Ct. 1970. Indeed, even where "prison officials ... actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk"—and, importantly for present purposes, "even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. 1970. This is so because "[a] prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844–45, 114 S.Ct. 1970 (quotations and internal citations omitted); *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) ("It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates...." (quotation omitted)).

*Swain*, 2020 WL 3167628, at *5.

### D.  Preliminary Injunctive Relief

In this case, the court finds that the medical treatment provided to Quinney does not show deliberate indifference. Thus, as to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Quinney has failed to show a substantial likelihood of success on the merits, and his motion for preliminary injunction is due to denied for this reason alone. Nevertheless, the court also finds that Quinney has not met his burden of establishing a substantial threat that he will suffer the requisite irreparable injury absent

issuance of the requested preliminary injunction nor that the balance of potential harm weighs in his favor. On this latter element, the court discerns that the potential for harm weighs more heavily in favor of the defendants as issuance of the injunction would have an unduly adverse effect on the ability of medical personnel to exercise their professional judgment in determining the appropriate manner in which to provide medical treatment to inmates and would inappropriately shift the authority to make such treatment decisions to inmates who are completely devoid of medical training. Finally, the public interest element of the equation is, at best, a neutral factor at this juncture. Quinney has therefore failed to meet his burden of demonstrating the existence of each element necessary to warrant issuance of preliminary injunctive relief.

## IV.  CONCLUSION

A preliminary injunction is "not to be granted unless the movant clearly establish[es] the burden of persuasion as to all four elements." *CBS Broadcasting v. Echostar Communications Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001) (internal quotations omitted). Quinney has failed to carry his burden of persuasion on the four requisite elements as is required to establish entitlement to preliminary injunctive relief.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by the plaintiff be DENIED.

2. This case be referred back to the undersigned Magistrate Judge for further appropriate proceedings.

On or before **July 13, 2020**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions contained

in the Recommendation to which his objection is made. Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 29th day of June, 2020.

/s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE