IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCUS QUINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-CV-229-MHT-CSC |
| | ) |
| LEON BOLLING and | ) |
| ALABAMA DEPARTMENT | ) |
| OF CORRECTIONS, | ) |
| | ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Marcus Quinney filed this *pro se* 42 U.S.C. § 1983 action in March 2020.[1] *See* Doc. 1. Thereafter, Defendants filed an Answer (Doc. 11) and Special Report (Doc. 9), in which they move for summary judgment, and Plaintiff filed a response (Doc. 21). Upon consideration of the parties' submissions, and for the reasons set forth below, the undersigned RECOMMENDS that Defendants' Special Report be construed as a motion for summary judgment; the motion be GRANTED; and this case be DISMISSED with prejudice.

**I.    THE COMPLAINT**

Plaintiff brings this suit against Leon Bolling, Warden of Kilby Correctional Facility, and the Alabama Department of Corrections ("ADOC"). Doc. He alleges that, in

---

[1] Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *See Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993). Absent evidence to the contrary, the Court must "assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

March 2019, the ADOC sent him to a physician at the University of Alabama Medical Center "because of a mass . . . growing over and through [his] eyeball socket." Doc. 1 at 2. The physician determined that Plaintiff "was in immedia[te] need of surgery . . . before the mass . . . continues to grow and wors[en] his condition." *Id*. Plaintiff then returned to Kilby, where he was "subjected to negligence by being deprived medical attention after repeated complaints and visits to the Kilby Medical Ward." *Id*. Specifically, on February 26, 2020, he put in a sick call request complaining about pain and swelling around his eye, and a nurse named Ms. Brown told him that "the state would do nothing for him upon the surgical advi[c]e the . . . physician gave them." *Id*.

Based on the above allegations, Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[2] *Id*. at 3. As relief, he seeks monetary damages, declaratory relief, and injunctive relief. *Id*.

## II.   MOTION BEFORE THE COURT

On June 1, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims (Doc. 6), which Defendants did on June 23, 2020 (Doc. 9). In their Special Report, Defendants move for summary judgment and provide

---

[2] Plaintiff also purports to bring state law claims of negligence, abuse of process, and intentional infliction of emotional distress. *See* Doc. 1 at 2–3. However, as will be addressed below, Plaintiff has failed to state a 42 U.S.C. § 1983 claim against either of the named defendants, and the Court should therefore decline to exercise supplemental jurisdiction over Plaintiff's remaining purported state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

2

evidentiary materials in support. *Id.* On July 2, 2020, the Court issued another Order directing Plaintiff to file a response to the Special Report (Doc. 20), which the Court received on July 8, 2020 (Doc. 21). In its July 2 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Report and Plaintiff's response as a motion for summary judgment and response. *Id*. at 3. No objections were filed. Thus, the Special Report may now appropriately be construed as a motion for summary judgment.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—

4

including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## IV. RELEVANT FACTS[3]

The following facts derive from the sworn evidentiary materials attached to Defendants' Special Report (Doc. 9-1) and Plaintiff's Complaint (Doc. 1), which was signed under penalty of perjury. *See Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018)

---

[3] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.") (citation omitted).

("[Plaintiff] verified his complaint . . . in accordance with 28 U.S.C. § 1746 by attesting to the truth of his factual assertions under penalty of perjury, and we have held that pleadings verified under § 1746 are admissible (and may substitute for sworn affidavits) on summary judgment."). Although Plaintiff also filed a response to the Special Report (Doc. 21), the Court cannot consider that response in deciding summary judgment because it is neither sworn nor properly verified in accordance with 28 U.S.C. § 1746.[4]

As noted above, the Complaint provides that, in March 2019, the ADOC sent Plaintiff to a physician due to a mass surrounding his eye; the physician determined that Plaintiff needed surgery "before the mass . . . continues to grow and wors[en] his condition"; upon his return to Kilby, he was "subjected to negligence" by unidentified individuals despite "repeated complaints and visits to the Kilby Medical Ward"; and, in February 2020, a nurse named Ms. Brown, who is not a named defendant in this action, told him that "the state would do nothing for him upon the surgical advi[c]e the . . . physician gave them." Doc. 1 at 2.

In response, Defendants have proffered Plaintiff's medical records, which are undisputed and which set forth the following version of events. Plaintiff arrived at Kilby on January 3, 2019. Doc. 9-1 at 17. At that time, it was noted that he was blind in his right eye as a result of a possible tumor, and that he was "scheduled to see provider tomorrow."

---

[4] *See, e.g., McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (noting that omission of the phrase "under penalty of perjury" would "allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods"); *Grupo Rayco C.A. v. Delta Air Lines, Inc.*, No. 1:20-CV-1952, 2021 WL 1351859, at *9 n.3 (N.D. Ga. Mar. 16, 2021) ("By omitting the requisite language stating that the certification was made 'under penalty of perjury,' counsel has failed to substantially comply with [§ 1746].").

*Id*. at 18. The following day, on January 4, 2019, he was prescribed ophthalmic eye drops to keep on his person for 180 days. *Id*. at 22. Additionally, that same day, a series of objective tests were ordered for Plaintiff as well as an eye clinic referral. *Id*. at 29. On January 16, 2019, he underwent a comprehensive physical examination, including an examination of his right eye. *Id*. at 24. It was noted that he would return for a follow-up visit in 90 days. *Id*. at 26. On January 28, 2019, medical personnel at Kilby ordered a Release of all Medical Records and Medical Information from the federal correctional facility at which Plaintiff was previously incarcerated. *Id*. at 31. These records included an MRI from November 9, 2018, which indicated that the mass at issue had remained "stable in size" since 2008. *Id*. at 14 (further noting that "the lesion hasn't significantly changed in size nor appearance over the last 10 years").

On February 6, 2019, Plaintiff was examined by a specialist ophthalmologist, Russell Read, M.D., at the Callahan Eye Hospital Clinic. *Id*. at 36. At that time, Plaintiff was prescribed Maxitrol eye drops to use every 3–4 hours. *Id*. at 37. Dr. Read's notations from that visit state in part: "[D]iscussed the possibility of strab surgery, but discussed that patient has lots of CRS posteriorly and will not improve vision.[] [S]/p sulcus IOL OD – seems like complicated surgery . . . poor visual potential based on posterior exam." *Id*. at 39, 41. On February 27, 2019, an optometrist examined Plaintiff at Kilby, gave him a dilated eye exam, and noted that Plaintiff's previous MRI indicated that there was a cyst behind his right eye. *Id*. at 33. On April 8, 2019, Plaintiff was again examined at Kilby, at which time the medical provider noted a plan to "[r]eturn to eye clinic." *Id*. at 43. It appears Plaintiff met with medical personnel several more times in April and May 2019 regarding

7

his eye, although the notations regarding those visits are difficult to discern. *See id*. at 45–47.

On December 12, 2019, Plaintiff complained of swelling and soreness under his right eye, which he rated as a 3 out of 10 on the pain scale, and he was given acetaminophen and referred to a provider regarding his discomfort. *Id*. at 50. On February 27, 2020, upon presenting to sick call, Plaintiff's eye was again examined at Kilby. *Id*. at 54. The medical provider noted the following regarding that visit:

> [Complains of] drainage/matting [in right] eye – chronic x 3 weeks. States H/O tumor behind [right] eye, which he reports has been growing over the years + lost vision [in right] eye after surgery was attempted to remove cataract . . . years ago. States has chronic intermittent H/O and pain which he attributes to the tumor behind his eye. [Prescriptions written] for conjunctivitis and swelling to [right] eye in December, however, patient presents with full tube of erythromycin. States he was only instructed to use it for "a couple of days."[]
>
> > (1) Conjunctivitis – Resume Eryopthalmic . . . [Follow up] 7 days.
> > (2) Blind OD + strabismus medial OD (esotropia)
> > (3) Orbital lymphangioma – Chronic. Stable x 10 years per last MRI (see MRI report 11/9/18). Ophthalmology consult – 2/6/19 has been submitted > UM approved.
>
> Consultant Report – Strabismus surgery will not improve vision . . . . Stable lymphangioma of orbit – Surgery will not improve vision . . . .
>
> Will again discuss with medical director . . . . Stable MRI report. 2018 report compared to 2008 report – no interval [change] in size.
>
> Surgery complicated and will not restore vision . . . .
>
> Consultant's findings discussed with patient. Patient verbalizes understanding of consultant's findings and poor prognosis for vision restoration.

*Id*. at 54–55.

Finally, Dr. Wilcotte Rahming, Medical Director for Wexford Health Sources at Kilby, avers that he is personally aware of the medical treatment Plaintiff received while incarcerated at Kilby; that Plaintiff's medical needs were at all times treated with the standard of care of physicians practicing medicine in Alabama, were at no time ignored or delayed, and were closely monitored by the medical staff at Kilby; and that Dr. Read did not recommend any objective surgical needs for Plaintiff. *Id*. at 1–8.

### V.     DISCUSSION

####     a.     Claims Against Defendant Alabama Department of Corrections

First, to the extent Plaintiff seeks to sue the ADOC as an entity, he cannot do so. It is well-settled that the State and its arms are not "persons" subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). The ADOC is an arm of the State of Alabama. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (recognizing that the Alabama Board of Corrections is a part of the State); *see* Ala. Code § 14–1–1.1 (providing that the ADOC is the successor to the Board of Corrections). Accordingly, because the ADOC is not an entity subject to suit under § 1983, any purported claims against the ADOC should be DISMISSED. *See, e.g., Billingsley v. Daniels*, No. 2:16-CV-748, 2017 WL 1652615, at *1 (M.D. Ala. Mar. 13, 2017) ("The ADOC is not subject to suit or liability under § 1983.").

####     b.     Claims for Declaratory and Injunctive Relief

Second, as to Plaintiff's claims for declaratory and injunctive relief, those claims have been rendered moot. In October 2020, Plaintiff filed a Notice of Change of Address indicating that he had been released from ADOC custody. Doc. 24. A recent search of the

9

ADOC inmate database further demonstrates that Plaintiff is no longer incarcerated.[5] In the event of a prisoner's "subsequent release . . . his claims for declaratory and injunctive relief are [rendered] moot." *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (holding inmate's release from prison mooted his claims for declaratory and injunctive relief); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (inmate's claim for declaratory and injunctive relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred); *McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (inmate's transfer to a different jail moots claim for declaratory and injunctive relief). Accordingly, because Plaintiff has been released from ADOC custody since the filing of this action, his claims for declaratory and injunctive relief should be DISMISSED as moot.

### c. Claim for Monetary Damages Against Defendant Bolling in his Official Capacity

Third, to the extent Plaintiff seeks monetary damages from Defendant Bolling in his official capacity, he is not entitled to such relief. Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity

---

[5] *See* http://doc.state.al.us/InmateSearch (last visited on May 11, 2023).

in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendant Bolling in his official capacity, Defendant Bolling is entitled to sovereign immunity.[6] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

### d. Eighth Amendment Deprivation of Medical Care Claim Against Defendant Bolling in his Individual Capacity

Finally, having recommended that Plaintiff's claims against the ADOC, claims for declaratory and injunctive relief, and claim for monetary damages against Defendant Bolling in his official capacity be dismissed, all that remains is Plaintiff's Eighth Amendment claim for monetary damages against Defendant Bolling in his individual capacity. However, Plaintiff has failed to establish a genuine issue of material fact as to this claim.

To succeed on an Eighth Amendment deprivation of medical care claim, a plaintiff must demonstrate at least two elements. First, he must demonstrate "an objectively serious

---

[6] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will*, 491 U.S. at 71; *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983."); *Dees v. Lamar*, No. 2:20-CV-1326-LSC-GMB, 2021 WL 1953137, at *5 (N.D. Ala. Mar. 4, 2021) ("Prison wardens and their officers, all of whom are employed by the Alabama Department of Corrections, are state officials[.]") (citing *Jacoby v. Thomas*, No. 18-14541-C, 2019 WL 5697879, at *1 (11th Cir. Oct. 16, 2019)).

medical need . . . that, if left unattended, pos[es] a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations and citations omitted). "[A] serious medical need is [one] diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). Second, he must demonstrate that the defendant's response, or lack thereof, was "poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

"[T]o show the required subjective intent to punish, [the] plaintiff must demonstrate that the [defendant] acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). A finding of deliberate indifference requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [and that he] also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (an Eighth Amendment violation occurs only where the defendant actually knows of and disregards "an excessive risk to inmate health or safety"). "When the need for treatment is obvious, medical care that is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). However, a "simple difference in

medical opinion" does not constitute deliberate indifference. *Simpson*, 200 F. App'x at 839 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Even assuming Plaintiff has demonstrated an objectively serious medical need, he has wholly failed to demonstrate deliberate indifference by Defendant Bolling. As an initial matter, Plaintiff's Complaint does not allege *any* specific facts pertaining to Defendant Bolling. The only allegation regarding Defendant Bolling states, in a conclusory manner, "By witnessing the Defendant Warden Bolling illegal action, failing to provide the medical care needed, the constitutional rights of [Plaintiff] has been violated." Doc. 1 at 3. However, "mere conclusions and unsupported factual allegations" such as this "are legally insufficient to defeat a summary judgment motion." *Ellis*, 432 F.3d at 1326 (citation omitted). There are no further allegations explaining *how* Defendant purportedly failed to provide Plaintiff with needed medical care, and there is no evidence in the record to suggest that Defendant even knew of Plaintiff's eye condition, much less that he knew it posed a substantial risk of serious harm to Plaintiff and disregarded that risk.[7] These reasons alone warrant summary judgment in Defendant's favor.

Moreover, Plaintiff has failed to demonstrate deliberate indifference by *any* specific ADOC official. The undisputed medical evidence demonstrates that, from the date of Plaintiff's initial incarceration in January 2019 to the filing of this action in March 2020, Plaintiff's eye was evaluated by numerous medical professionals and monitored by Kilby

---

[7] To the extent Plaintiff believes Defendant Bolling *should* have known about his condition because it was in his medical records, no liability arises for an official's failure to alleviate a significant risk that he should have perceived but did not, and imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

medical staff. On January 3, 2019, upon arriving at Kilby, Plaintiff was scheduled to see a medical provider the following day. On January 4, 2019, he was prescribed eye drops and referred to an eye clinic. On January 16, 2019, he underwent a physical evaluation and was scheduled for a follow-up in 90 days. On January 28, 2019, medical personnel ordered production of Plaintiff's previous medical records, which indicated that the mass at issue had remained stable in size and appearance over the past decade. On February 6, 2019, Plaintiff was examined by a specialist ophthalmologist, who noted that he discussed the *possibility* of surgery with Plaintiff but that the surgery seemed complicated and would not improve Plaintiff's vision. On February 27, 2019, Plaintiff was examined by an optometrist at Kilby. In April and May 2019, Plaintiff continued to meet with medical staff regarding his eye. In December 2019, Plaintiff was prescribed erythromycin for conjunctivitis and swelling. On February 27, 2020, a medical provider again examined Plaintiff at Kilby, instructed him to apply an eryopthalmic ointment for 7 days, and scheduled him a follow-up appointment one week later.

This does not appear to be a situation in which Plaintiff received medical care so cursory as to amount to no treatment at all. *See Simpson*, 200 F. App'x at 839. While Plaintiff was incarcerated at Kilby, his eye was examined multiple times by multiple medical professionals, such as a specialist ophthalmologist and optometrist, and he was prescribed various treatments and pain relief, such as eyedrops, acetaminophen, and erythromycin. A relatively recent MRI from November 2018 indicated that the mass had remained stable in size and appearance over the past decade, and there is no indication that the mass grew or changed during his time at Kilby. Although the ophthalmologist discussed

the *possibility* of surgery with Plaintiff, nowhere do the medical records indicate that he believed Plaintiff to be in "immedia[te] need" of surgery to stop the mass from "grow[ing] and wors[ening] his condition." *See* Doc. 1 at 2. Although surgery may have been one option to treat Plaintiff, the fact that other, more conservative options were utilized instead—particularly given that the discussed surgery was seemingly elective, complicated, and incapable of improving Plaintiff's eyesight—does not, without more, constitute deliberate indifference. *Simpson*, 200 F. App'x at 839 (quoting *Waldrop*, 871 F.2d at 1033).[8]

Accordingly, because Plaintiff has failed to demonstrate that Defendant Bolling—or any particular ADOC official—disregarded an excessive risk to his health or safety, he has failed to establish a genuine issue of material fact as to his Eighth Amendment deprivation of medical care claim. As such, Defendant Bolling is entitled to summary judgment on this claim.

---

[8] *See also Jackson v. Jackson*, 456 F. App'x 813, 814–15 (11th Cir. 2012) (affirming summary judgment for defendants where plaintiff claimed he should have received hernia surgery earlier because plaintiff received treatment for his hernia symptoms, including pain medication and a hernia truss; the delay in surgery was because the hernia remained treatable without surgery and posed no risk to plaintiff's health; and the delay did not worsen plaintiff's condition); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment"); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

## VI.  CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Report (Doc. 9) be construed as a motion for summary judgment;

2. the motion be GRANTED; and

3. this case be DISMISSED with prejudice.

It is further ORDERED that, on or before **May 26, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 12th day of May, 2023.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE